## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DONNIE RAY STALLWORTH, JR.,**

      **Petitioner,**

**v.**                        **Case No.  3:16cv642-LC/CAS**

**JULIE L. JONES,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On November 30, 2016, Petitioner, Donnie Ray Stallworth, Jr., a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Respondent filed a response on August 31, 2017.  ECF No. 12.  Petitioner filed a reply on October 26, 2017.  ECF No. 17.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

<u>Background and Procedural History</u>

Petitioner was charged by Information filed on July 20, 2009, in the

Circuit Court of Escambia County, Florida, with two counts of second-

degree murder with a weapon and one count of home invasion robbery.

Ex. B1 at 4-5.[1]  A superseding indictment was filed on August 11, 2009,

charging Petitioner with two counts of first-degree murder and one count of

armed robbery.  Ex. A at 12; B1 at 1-2.  After a jury trial, Petitioner was

found guilty on July 21, 2011, with the specific finding that Petitioner

actually possessed a firearm during the commission of the robbery.  Ex. B7

at 1277-78.

The evidence at trial, in brief, was that Petitioner participated in the

planning and execution of a home invasion robbery with six other

individuals, one of whom stayed outside by the van during the robbery and

one of whom drove up and down the road acting as lookout.  The others,

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through E submitted in conjunction with Respondent's answer.  *See* ECF No. 13, 13-1 through 13-24.

including Petitioner, entered the home.  The home invasion occurred on

July 9, 2009, at the residence of Byrd and Melanie Billings in Pensacola,

who were believed to have a large amount of cash in a safe in their home.

According to the testimony of Frederick Thornton, a co-defendant who

entered into a plea agreement, the two residents were both shot and killed

during the home invasion by another of Petitioner's co-defendants, Patrick

Gonzalez, Jr.  A safe was taken from the home. The father of Patrick

Gonzalez, Leonard Gonzalez, Sr., also entered into a plea deal and

testified against Petitioner.

Petitioner was adjudicated guilty and sentenced to life in prison with

credit for 724 days served on count 1; life in prison for count 2 consecutive

to the sentence in count 1; and 30 years in prison for count 3 to be served

concurrent to the sentence in count 1.  Ex. B7 at 1280-88.

Petitioner appealed to the state First District Court of Appeal, which

affirmed per curiam without written opinion on November 8, 2012, and

issued the mandate on November 27, 2012.[2]  Ex. B29, B30.  *See*

Stallworth v. State, 100 So. 3d 683 (Fla. 1st DCA 2012) (Table).

---

[2] The issues raised on direct appeal were: (1) the trial court erred in limiting cross-examination of the state's witness, Frederick Thornton; (2) the trial court erred in denying Stallworth's motion for mistrial based on the prosecutor's comment in closing argument on Stallworth's right to remain silent; and (3) fundamental error occurred in jury instruction on the law of principals.  Ex. B26.

On January 2, 2014, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, and filed an amended motion on May 19, 2014, raising eight claims for relief.[3]  Ex. C2 at 152-229.  The post-conviction court held a hearing on claims 2 and 4, *see* Ex. C2 at 238-39, 242-286, and on July 31, 2015, issued an order denying the motion for post-conviction relief.[4]  Ex. C3 at 287-443.

Petitioner appealed denial of post-conviction relief to the district court of appeal, and on October 28, 2016, the court affirmed per curiam without written opinion.  Ex. C7.  The mandate was issued on November 23, 2016.  Ex. C8.  *See* Stallworth v. State, 202 So. 3d 413 (Fla. 1st DCA 2016) (table).

---

[3] The claims raised in Petitioner's amended motion for post-conviction relief were: (1) Ineffective assistance of counsel (IAC) in failure to object and move for a mistrial when prosecutor argued facts not supported by evidence; (2) denial of due process when prospective juror S. H. gave a false answer to questions during voir dire; (3) IAC in failure to question several jurors who were victims of crime; (4) IAC in failure to object to sleeping juror during Petitioner's testimony; (5) IAC in failure to object to the State's use of inadmissible hearsay concerning Petitioner's participation in an unrelated home invasion robbery; (6) the State knowingly suborned perjury of witness Gonzalez, Sr.; (7) IAC in failure to petition the state district court of appeal for a writ of prohibition to review denial of defense motion to disqualify Judge Geeker; and (8) denial of due process because of cumulative error.  Ex. C2 at 152-229.

[4] Petitioner, pro se, appealed the denial of each of his eight postconviction claims without reciting the "issue" for each.  *See* Ex. C4.  The State filed an answer brief reciting the claims on appeal as they mirrored the claims raised in the amended motion for post-conviction relief.  Ex. C5.

On November 30, 2016, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

(1) Trial counsel rendered ineffective assistance by failing to object and move for mistrial when the prosecutor argued in opening statement facts not supported by the evidence.  ECF No. 1 at 4.

(2)  Petitioner was denied due process and a fair trial when prospective juror S. H. knowingly gave false answers during voir dire that he did not know the victims.  ECF No. 1 at 6.

(3)  Petitioner was denied due process and a fair trial when counsel failed during voir dire to question several prospective jurors who were victims of crime.  ECF No. 1 at 7.

(4)  Trial counsel rendered ineffective assistance for failing to object to a sleeping juror and move the court to replace the juror, resulting in a deprivation of due process and a trial that was not fair, in violation of the Fourteenth Amendment to the United States Constitution.  ECF No. 1 at 9.

(5)  Trial counsel rendered ineffective assistance when counsel failed to object to the State's use of inadmissible hearsay concerning Petitioner's participation in an unrelated home invasion robbery, resulting in violation of Petitioner's rights under the Sixth Amendment to the United States Constitution. ECF No. 1 at 11.

(6)  The State knowingly suborned perjury by manipulating the testimony of witness Gonzalez, violating Petitioner's rights under the Fourteenth Amendment.  ECF No. 1 at 11.

(7)  Trial counsel rendered ineffective assistance by failing to petition the State district court of appeal for a writ of prohibition to review denial of defense counsel's motion to disqualify the

trial judge, in violation of the Fourteenth Amendment.  ECF No. 1 at 11.

(8)  Petitioner was denied due process of law in violation of the Fourteenth Amendment as a result of cumulative errors.  ECF No. 11.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights." Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275 (citation omitted)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. <u>Strickland</u>, 466 U.S. at 697.

### <u>Ground 1:</u> IAC—Comments in Opening Statement

Petitioner contends that he was denied effective assistance of counsel when his trial counsel failed to object and move for mistrial during opening statement. ECF No. 1 at 4. Respondent contends that the claim is unexhausted and thus procedurally defaulted because when he raised this issue in the State post-conviction court, Petitioner cited the Fourteenth Amendment, but on appeal he failed to cite the Fourteenth Amendment. ECF No. 12 at 7. In the postconviction appeal from denial of relief, Petitioner claimed that his trial counsel rendered ineffective assistance in failing to object to the prosecutor's comments. Ex. C2 at 168; Ex. C4 at 5-6. In support of his claim, he cited <u>Strickland</u> rather than the Fourteenth Amendment. Regardless of whether these arguments and citation of authority were sufficient to exhaust the constitutional claim in state court, the claim is without merit and should be denied.

Petitioner does not identify the particular comments to which he contends counsel should have objected, but in his amended motion for post-conviction relief in State court, he cited the prosecutor's comments in opening statement that the proof will show that his co-defendants, Frederick Thornton and Leonard Gonzalez, Sr.,[5] never met each other before July 4 and July 9, so they independently implicated Defendant. Ex. C2 at 168. Petitioner argued in the amended post-conviction court and in this Court that his trial counsel should have objected and moved for mistrial because the State did not prove during trial that Gonzalez, Sr., implicated Petitioner at any time prior to the witness's trial testimony. *Id.* Petitioner argued that this comment misled the jury to conclude that Gonzalez, Sr., was consistent from the beginning of the investigation in his account of Petitioner's participation in the crime. Ex. C2 at 170.

The postconviction court denied the claim without a hearing, noting that the transcript shows defense counsel addressed these comments in his opening statement. Counsel stated that the jury would not hear testimony that Gonzalez, Sr., and Thornton did not tell the same account of the events; and that the jury would hear Gonzalez, Sr., did not identify

---

[5] Petitioner refers to Patrick Gonzalez, Sr., but the trial transcript identifies the witness as Leonard Gonzalez, Sr.

Petitioner in his initial interview and that the two co-defendants did not give

similar stories.  Ex. C3 at 290.  The post-conviction court pointed out that

defense counsel addressed the issue again during closing, objecting to the

State's visual aid that stated Gonzalez, Sr., implicated the defendant in his

initial statement.  *Id.* at 291.

Moreover, the post-conviction court was correct that trial counsel did

object and move for mistrial on the ground that there was no evidence that

Gonzalez, Sr., implicated Petitioner in his initial interview.  Trial counsel

objected and argued as follows:

> **MR. KYPREOS (for the defense):** Objection, Your Honor.  May we approach?
>
> **THE COURT:**  Yes, sir.
>
> (at the bench)
>
> **MR. KYPREOS:** Your honor, on the screen they flashed on the statement that - - that Gonzalez, Sr., implicated the defendant in his initial statement.  He did not do that.  There is no proof or testimony that he did that.  That is very clear.  I made that point yesterday, that that should not happen during the closing argument, and that should not come up in this material.  He never mentioned the defendant by name or even give [sic] a physical description of him in the opening statement.  And he never selected the photographic lineup. This is a serious misleading statement of fact.  That is not one that we can clean up by saying, well, the jury is going to decide what the facts are.  That is just not supported by the evidence, and that's critical to this case because they're going to be getting up and arguing and say, well, is it just coincidence that they each mentioned the defendant?  Well, the fact is Mr. Gonzalez, Sr., did not mention the defendant in that opening - - in that opening interview with law enforcement. . . .  Or in any interview, for that

matter.  And to put that in front of the jury right now and make that argument is just not supported by the evidence.

. . . .

**THE COURT:** Your objection is noted.  I've instructed the jury before that what they say in closing argument is not evidence in the case.  They can argue inferences from the evidence. You can argue contrary.  Okay.  Your objection is noted and preserved.

. . . .

**MR. KYPREOS:** I want to move for a mistrial on that basis.  If we can at least have them put it on the screen long enough so we can read into the record exactly what's being shown.

. . . .

**THE COURT:** . . . The motion for mistrial is denied.

(bench conference concluded)

**THE COURT:** [to jury] There was an objection.  I've overruled the objection, but let me repeat and reiterate what I said earlier.  What the attorneys say in these final arguments is not evidence in the case. . . .

Ex. B25 at 867-70.  On direct appeal from Petitioner's conviction and sentence, Petitioner did not raise any issue concerning his objection and denial of the motion for mistrial.  *See* Ex. B26.

In denying this post-conviction claim, the court found that counsel moved for mistrial and vehemently argued the point before the jury—and moved for a new trial on this ground as well.  Ex. C3 at 292, 438.  The court concluded that counsel's performance was not deficient and that no

prejudice had been shown.  *Id.* at 292-93.  The State district court affirmed per curiam without explanation.

As for the prejudice prong of Strickland, Petitioner contended only that if trial counsel had objected to the comments made in opening statement and moved for mistrial, "the court more than likely would have granted counsel's motion thereby altering the outcome of the trial in Mr. Stallworth's favor."  Ex. C2 at 170.  However, even if an objection and motion for mistrial had been made during opening statement, it had little possibility of success.  This is in accord with Florida law that holds "[a] mistrial will be granted only when the error is so prejudicial as to vitiate the entire trial."  *See* Salazar v. State, 991 So. 2d 364, 372 (Fla. 2008).  In Florida, wide latitude is permitted in presenting opening and closing statements, and comments by the prosecutor will merit a mistrial only when they deprive a defendant of a fair and impartial trial, materially contribute to the conviction, are so harmful or fundamentally tainted as to require a new trial, or are so inflammatory they might have influenced the jury to reach a more severe verdict than it would have otherwise rendered.  Miller v. State, 161 So. 3d 354, 382 (Fla. 2015) (citing Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)).

To establish prosecutorial misconduct, the Petitioner must first show that the comments were improper and then that the comments rendered the trial fundamentally unfair. *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). Prosecutorial misconduct in argument "violates the Constitution if it renders the defendant's trial "so fundamentally unfair as to deny him due process" and "reaches this threshold of fundamental unfairness if it is 'so egregious as to create a reasonable probability that the outcome was changed.' " Davis v. Zant, 36 F.3d 1538, 1545 (11th Cir. 1994) (quoting Brooks v. Kemp, 762 F.2d 1383, 1403 (11th Cir. 1985) (en banc), *vacated on other grounds,* 478 U.S. 1016 (1986), *reinstated,* 809 F.2d 700 (11th Cir.1987)).

Petitioner has not demonstrated that the alleged error was so prejudicial as to vitiate the entire trial, and that if trial counsel had objected and moved for mistrial during opening statement, there was a reasonable probability of a different result. Nor has Petitioner demonstrated that the prosecutor's comments "so infected the trial with unfairness as to make a resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986).

Petitioner has not shown that adjudication of the claim in state court resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or was based on an unreasonable

determination of the facts in light of the evidence presented in the State

court proceeding.  *See* 28 U.S.C. § 2254(d); Pinholster, 563 U.S. at 181.

For all these reasons, this ground should be denied.

### Ground 2: False Answers During Voir Dire

Petitioner contends that he was denied due process and a fair trial

when prospective juror S. H. knowingly gave false answers during voir dire

that he did not know the victims.  ECF No. 1 at 6.  Respondent argues that

the claim is unexhausted and procedurally defaulted because Petitioner's

general reference to due process and a fair trial in his amended motion for

postconviction relief, and his citation to state rules of procedure, do not

raise a federal constitutional claim in state court.  Respondent also argues

that in his post-conviction appeal, Petitioner raised the juror response claim

but failed to state any purported constitutional grounds for the claim.  Ex.

C7 at 6.  Respondent is correct that this claim in unexhausted and

procedurally defaulted.  Petitioner failed to "fairly present" his claim, and the

constitutional basis for his claim, in each appropriate state court in order to

alert the state courts to the federal nature of the claim.  Henry, 513 U.S. at

365; Picard, 404 U.S. at 275; O'Sullivan, 526 U.S. at 845.  Petitioner has

cited no grounds to excuse the default. Regardless of the default, the claim is without merit and should be denied.

During voir dire, the prospective jurors were asked several times if anyone knew Byrd or Melanie Billings, and juror S.H. did not respond. *See* C3 at 322, 327. In his amended motion for post-conviction relief, Petitioner argued that he learned after the trial that juror S.H., who did serve on the jury, was "socially acquainted with the Billings family at the time of the murder." Ex. C2 at 172. The motion alleged that Hattie Dearden, a personal associate of juror S.H. and his wife, would testify that S.H. knew the victims. *Id.* at 173.

An evidentiary hearing was held on this claim. Ex. C2 at 242-85. Hattie Dearden testified that her brother knows Petitioner and was incarcerated at Graceville Prison where Petitioner was incarcerated. *Id.* at 256, 258. She testified that she worked at Sonny's with the juror's wife, Lynn, who told her during Petitioner's trial that her husband was on the jury and that she was friends of the family of "the girl." *Id.* Dearden first testified she did not hear anything from the juror's wife about juror S.H. being friends with the victim's family. *Id.* at 257. She then testified on cross-examination that the juror's wife told her that "they was acquainted" with the Billings' daughter. *Id.*

The juror's wife, Lynn, also testified at the evidentiary hearing.  Ex. C2 at 273.  She denied that she ever told Hattie Dearden that she was acquainted with the murder victims.  *Id.* at 275.  She testified that she did, in fact, "know of" the victims' daughter through a former mutual friend, but did not know her personally.  *Id.*  She might have mentioned to Ms. Dearden that her friend knew the Billings' daughter.  *Id.* at 276.

The post-conviction court denied the claim, finding that "no specific unequivocal testimony has been received that [the juror] was in any way familiar with any member of the victim's family.  Indeed, the Court finds credible the testimony of [the juror's wife] that she simply shared a mutual friend with the daughter of the victims."  Ex. C3 at 294.  Defendant appealed this denial of this claim to the State district court of appeal, which affirmed per curiam without explanation.

In light of the testimony presented at the evidentiary hearing, the post-conviction court's credibility determinations and conclusions are not objectively unreasonable.  Under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas

review." <u>Consalvo v. Sec'y, Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.* at 845.

Even if Petitioner had demonstrated cause and prejudice to excuse the procedural default, this ground lacks merit and should be denied. Petitioner has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## <u>Ground 3:</u> **Jurors Who Were Victims of Crime**

Petitioner contends that he was denied effective assistance of counsel during voir dire when his trial counsel failed to fully question four jurors who indicated they had been victims of crime and failed to excuse them.  ECF No. 1 at 7.  Respondent contends that the claim is unexhausted and procedurally defaulted because Petitioner failed to allege a constitutional violation when he appealed the denial of this claim by the post-conviction court.  ECF No. 12 at 15.

In his post-conviction claim below, Petitioner alleged ineffective assistance of counsel and a violation of the Fourteenth Amendment, as he claims in this court, and contended that if his counsel had questioned them further or struck them, it would have "possibly resulted" in a more favorable verdict.  Ex. C2 at 178.  In his post-conviction appeal, however, Petitioner alleged that the post-conviction court erred in denying the claim because the jurors were biased and should have been excused under Carratelli v. State, 961 So. 2d 312 (Fla. 2007).  C4 at 7.  Respondent is correct that this claim is unexhausted and procedurally defaulted.  Petitioner did not apprise the state appellate court of a federal constitutional claim.  Nor has he demonstrated any grounds to excuse the default.  Regardless of the procedural default, the claim is without merit and should be denied.

The post-conviction court denied the claim, concluding that the claim was refuted by the record of voir dire.  The court relied on the trial transcript that showed each of the jurors indicated that even though they had been victims of crime, they would not be affected by the experience and could be impartial.  Ex. C3 at 295.  Juror B explained that he was a victim of a burglary in 1986, when he was not at home, but he could put the incident aside and it would not affect his ability to be fair and impartial.  Ex. C3 at 323-24.  Juror H testified

he was not there on two occasions when burglaries occurred. *Id.* at

228. He responded that he could put the experiences aside and

make a decision without the crimes having any bearing on it. *Id.* at

236. Juror S.H. responded that he was the victim of car burglaries on

several occasions, but it would not affect his ability to be impartial. *Id.*

at 324-25. Juror N explained that he was the victim of identity theft in

2002, but it would not affect his ability to be impartial. *Id.* at 325.

The post-conviction court found that Petitioner failed to demonstrate

that any juror was actually biased as a result of his prior experiences and

that, under the Carratelli standard requiring actual bias, trial counsel was

not required to challenge the jurors. *Id.* at 295. Moreover, Petitioner only

alleged that removal of the jurors could "possibly" have resulted in a

different verdict. This speculation is insufficient to establish prejudice.

Even if Petitioner had properly exhausted this ground in the state

courts, the ground lacks merit and should be denied. Petitioner has not

shown that the state court's rejection of his claim involved an unreasonable

application of clearly established federal law or that it was based on an

unreasonable determination of the facts. Accordingly, this ground should

be denied.

## <u>Ground 4:</u>  Sleeping Juror

Plaintiff contends in this ground that trial counsel rendered ineffective assistance for failing to object to a sleeping juror and failing to move the court to replace the juror.  ECF No. 1 at 9.  He contends that this failure resulted in a deprivation of due process and a trial that was not fair, in violation of the Fourteenth Amendment to the United States Constitution. ECF No. 1 at 9.  Respondent contends that this claim is unexhausted and procedurally defaulted because he cited no constitutional grounds for the claim when he appealed denial of post-conviction relief in state court.  ECF No. 12 at 19.

In his amended motion for post-conviction relief, Petitioner alleged that his counsel was ineffective for failing to object to the sleeping juror and to move for replacement, and Petitioner cited the Fourteenth Amendment and state constitutional law.  Ex. C2 at 179.  In his post-conviction appeal, Defendant raised this same claim, citing <u>Strickland</u>.  Ex. C4 at 348.  The state appellate court affirmed per curiam without explanation.  Regardless of any procedural default resulting from Petitioner's failure to raise the same specific constitutional ground in his post-conviction appeal, the claim is without merit and should be denied.

The post-conviction court held an evidentiary hearing on this claim.

Ex. C2 at 242-285. At the hearing, Petitioner testified that when it became

apparent during trial that a juror was asleep, his trial counsel did not confer

with him about whether to keep the juror. Ex. C2 at 250. He then testified

that he did remember asking counsel why the juror was going to remain.

*Id.* He did not remember what his counsel said in response. Ex. C2 at

251.

Trial counsel testified at the evidentiary hearing that when the issue

of the sleeping juror came up at trial, counsel and Petitioner discussed the

options during the break called by the judge. He testified:

> A. . . . I discussed it with - - with Mr. Stallworth. And
> essentially, I pointed out to him, sort of humorously, if he was
> sleeping for part of the State's case that didn't bother me. I
> mean, to me that created the opportunity if he might have
> missed something when they go back to the jury room later
> they're arguing about what that witness said, then that creates
> an opportunity for us to get yet another hung jury.
>         . . . .
> And I explained - - the jury, we - - we used, as I recall, all
> our peremptories on the case and we got what we felt was an
> inside straight on the jury selection, kind of held our breath
> whether or not the State was going to strike any. We really
> didn't like what was coming after.
>
> So another discussion we had was, [d]o we really want to
> go to an alternate. And as I recall, we weren't really excited
> about the alternates at that point. We thought this juror would
> be fair. I mean, we just didn't see it as being a major issue at
> the time.

Q.  Okay, so you explained all this to Mr. Stallworth in a conference, and he was in agreement with you that it would be best to keep that juror?

A.  That was my understanding.  I mean, if he wanted to push it - -  I didn't want to get rid of the juror, and it's my understanding he didn't want to get rid of the juror either.  I mean, the alternate didn't look good.  We thought we had a good jury with the 12 that we had.

Ex. C2 at 266-68.

The post-conviction court denied relief, finding counsel's reasoning and performance were not deficient.  Ex. C3 at 297.  The Court noted that the juror was asleep during the direct examination of one of the State's main witnesses, Brad Thornton.  *See* Ex. B23 at 576.  The court found trial counsel's testimony credible that the decision to allow the juror to remain on the jury was made after consultation with Petitioner.  *Id.*  The court also found that Petitioner had not demonstrated a reasonable probability—that is, one that is sufficient to undermine confidence in the outcome—that had the juror been replaced, the outcome of the trial would have been different.  Ex. C3 at 297.

Regardless of any procedural default, Petitioner has not demonstrated that the adjudication of the state court was an unreasonable application of clearly established federal law or that it was based on an

unreasonable determination of the facts.  Accordingly, Ground 4 should be denied.

### Ground 5: IAC re Inadmissible Hearsay

Petitioner contends next that trial counsel rendered ineffective assistance when he failed to object to the State's use of inadmissible hearsay concerning Petitioner's participation in an unrelated home invasion robbery.  ECF No. 1 at 11.  He argues here, as he did in the post-conviction court, that this resulted in violation of Petitioner's rights under the Sixth Amendment to the United States Constitution.  *Id.*  Respondent argues that the claim is unexhausted and procedurally defaulted because Petitioner failed to cite the Sixth Amendment or any constitutional or federal basis in his postconviction appeal.  ECF No. 12 at 22-23.  In his appeal, Petitioner alleged ineffective assistance of counsel but failed to identify the basis for his claim as being a federal constitutional right.  *See* Ex. C4 at 7-8.

During the State's direct examination of Patrick Gonzalez, Sr., at trial he testified about a trip in a minivan with other individuals, including Gonzalez's son, who was driving, and Petitioner, who was in the far back seat.  The trip was to drive by the Billings' house to perform surveillance. Ex. B23 at 435-37.  Gonzalez testified that after that date, he asked his son how well he knew "these people."  Gonzalez testified:

A. . . . .  I asked him, I said Pat, how well you know these people?  He said, they're made.  I said, what do you mean they're made?  That's my son's way of talking like the Mafia or whatever you want to call it.

In any event he said that they had done a job in Fort Walton where they went down and did a robbery.  About $100,000 was taken.  The four blacks came out of the place that was robbed, put the money in his hand - -  or a package in his hand.  He did not straighten them up or square up with them financially for a couple of days.  Nothing was ever said.  He said they're dependable.

Ex. B23 at 442-43.  Petitioner's trial counsel did not object.

Later, during his cross-examination, Frederick Thornton testified that prior to the Billings robbery, he did not commit a robbery with some of the individuals named in Petitioner's case to steal $100,000.  Ex. B23 at 595; Ex. B24 at 607.  He also testified that if Gonzalez, Jr., told his father that a prior $100,000 robbery happened, it would not be true.  Ex, B23 at 595. Thornton also testified that Petitioner was part of the "gang" that planned to rob the Billings, Ex. B24 at 606, and that prior to the Billings' robbery, the group had not successfully completed a robbery.  Ex. B24 at 607.

The post-conviction court denied Petitioner's claim, finding that Petitioner failed to show his counsel's representation was deficient because "the Court does not conclude that the statements were inadmissible hearsay, as Defendant has not shown that the statements were offered to prove the truth of the matter asserted."  Ex. C3 at 298.  The post-conviction

court also found that Petitioner was not specifically identified in the statement as being a participant in a previous robbery, and that his trial counsel used the statement in an attempt to negate evidence offered pertaining to this case. Ex. C2 at 298-99. Finally, the post-conviction court found that Petitioner cannot demonstrate a reasonable probability that the outcome of the trial would have been different if counsel had objected. Ex. C3 at 300. The state appellate court affirmed denial of this claim without explanation.

The adjudication of the state courts has not been shown to be an unreasonable application of federal law or that it was based on an unreasonable determination of the facts. Even if trial counsel should have objected to the testimony of Gonzalez, Sr., concerning what his son told him about "these people," Petitioner has not demonstrated a reasonable probability that, had counsel objected, the outcome of the trial would have been different. The evidence at trial established that Petitioner participated in the home invasion of the Billings' residence: Petitioner participated in the planning of the home invasion robbery (Gonzalez, Sr. Ex. B23 at 434-46, F. Thornton, Ex. B23 at 531-45); during the home invasion, Petitioner went in the Billings' front door while the others went in the side doors (Gonzalez, Sr., Ex. B23 at 460; F. Thornton, B23 at 561-62, 567); after shots were

fired, everyone exited the house and Petitioner put a safe in the back of the van (Gonzalez, Sr., Ex. B23 at 462-63; Thornton, Ex. B23 at 571); Petitioner was picked out of a photo lineup after the murders (Thornton, Ex. B23 at 581-82). Even if the alleged hearsay statement about a prior robbery had been objected to and the jury instructed to disregard the answer, there is no reasonable probability that the outcome of the trial would have been different. Regardless of any procedural default, this claim lacks merit and habeas relief should be denied.

### Ground 6: Testimony of Witness Gonzalez

Petitioner asserts that the State knowingly suborned perjury by manipulating the testimony of witness Gonzalez, Sr., violating Petitioner's rights under the Fourteenth Amendment. ECF No. 1 at 11. He does not detail the substance of his claim in this Court, but in his state post-conviction motion, he argued that the prosecutor had coerced and manipulated the testimony of Gonzalez, Sr., after it was discovered he could not remember the facts of the crime due to his mental problems and dementia. Ex. C2 at 187-90. Respondent contends the claim is unexhausted and procedurally barred because Petitioner did not raise a specific Fourteenth Amendment claim on post-conviction appeal in state court. ECF No. 12 at 27.

On appeal from denial of this claim, Petitioner alleged only that his judgment and sentence are unconstitutional because the State "suborned perjury by manipulating the testimony" of Gonzalez, Sr.  Ex. C4 at 8.  The appellate court affirmed per curiam without discussion.  Regardless of any procedural default, the claim lacks merit and should be denied.

To the extent that Petitioner is raising a violation under <u>Giglio v United States</u>, 405 U.S. 150 (1972), he contends that the government's presentation of perjured testimony or failure to correct false evidence violates due process.  *Id.* at 153-55.  To prevail on a <u>Giglio</u> claim, the defendant must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) that the falsehood was material.  <u>United States v. Dickerson</u>, 248 F.3d 1036, 1041 (11th Cir. 2001).  Perjury is defined as testimony given with the intent to provide false testimony.  <u>United States v. McNair</u>, 605 F.3d 1152, 1208 (11th Cir. 2010).  Inconsistency of statements is not perjury, and not every inconsistent statement is material.  <u>United States v. Nelson</u>, 970 F.2d 439, 442 (8th Cir. 1992).  Further, a challenge to evidence through prior inconsistent statements is insufficient to establish prosecutorial use of false testimony.  <u>Hernandez v. State</u>, 180 So. 3d 978,

994 (Fla. 2015) (citing United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995)).

Petitioner contended in his post-conviction claim in state court that the prosecution provided Gonzalez, Sr., with information so that he could reiterate that information before the jury, and that the information provided to the witness for his testimony was false and known to be false by the prosecution.  Ex. C2 at 188.  Defendant alleged that Gonzalez, Sr., told him after trial, while incarcerated, that he could not independently remember the facts surrounding the crime and was not sure what testimony the prosecutor wanted him to give.  Petitioner asserts that Gonzalez, Sr., told him he felt pressured to give the statement he did at trial, and would testify "to the substance and effect of the state's coercion."  *Id.* at 189.  Petitioner cites no specific facts to support the claim.

The post-conviction court denied the claim, noting that during the direct examination of Gonzalez, Sr., the prosecutor elicited testimony about his short-term memory loss and possible brain damage from a 1996 accident.  Ex. C3 at 301.  The court also noted that it was illogical to conclude the witness could not remember any details of the crime but could remember a lengthy, manufactured statement provided by the prosecutor. *Id.*  The court found that the testimony Gonzalez, Sr., gave at trial was not

vastly different from statements he gave law enforcement shortly after the crimes.  Ex. C3 at 302 (citing testimony at Ex. B23 at 492-502).  It should be noted that the testimony of Gonzalez, Sr., concerning the details of preparation for and perpetration of the crime was also consistent with the testimony of F. Thornton.  The court concluded that Petitioner had not alleged sufficient grounds to find that Gonzalez, Sr., gave perjured testimony, that the prosecutor knew it was false, and that the witness was coerced.

Petitioner has not demonstrated that the adjudication of this claim by the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d); Pinholster, 563 U.S. at 181.  This ground should be denied.

### Ground 7: Writ of Prohibition re Disqualification of Judge

Petitioner contends that his trial counsel rendered ineffective assistance by failing to petition the State district court of appeal for a writ of prohibition to review denial of defense counsel's motion to disqualify the trial judge, in violation of the Fourteenth Amendment.  ECF No. 1 at 11.

Respondent argues that this claim is unexhausted and procedurally default because Petitioner did not raise any constitutional basis for the claim in his State post-conviction appeal.  ECF No. 12 at 30-31.  Even though Petitioner did not cite any constitutional basis in the appeal of denial of this claim by the post-conviction court, the claim is without merit and should be denied.

Petitioner does not elaborate on this claim in his § 2254 petition, but in the post-conviction court he argued that after two mistrials, his trial counsel moved to disqualify the trial judge, citing allegations of "judicial misconduct" that Petitioner believed would deprive him of a fair trial.  Ex. C2 at 191.  Trial counsel's motion to disqualify alleged in pertinent part that after a prior trial, which ended in mistrial, an anonymous person reported to defense counsel that the judge stated off the record that the State needed to establish a timeline of arrests and cooperation of co-defendants Thornton and Florence.  Ex. B6 at 1044.  The motion to disqualify was denied as "legally insufficient."  Ex. B6 at 1047.  Trial counsel did not seek a writ of prohibition in the state appellate court and denial of the motion was not appealed after the conviction and sentence in the subsequent trial.  *See* Ex. B26.

Petitioner contended that this judicial statement to the prosecutor demonstrated the trial judge was not impartial and was helping the State with its case. He argued that if counsel had sought a writ of prohibition, it would have been granted and a new judge would have presided who would be "more inclined" to rule favorably. Ex. C2 at 194. As the post-conviction court found in denying this claim, Petitioner's allegation was wholly speculative that if a different judge had presided at his trial, that judge would have been "more inclined" to grant the defense motion for mistrial and his objections.[6] Ex. C2 at 194. Petitioner cannot demonstrate a reasonable probability, sufficient to undermine confidence in the outcome of the trial, that if counsel had sought a writ of prohibition, the outcome of the trial would have been different. Thus, he has not met the prejudice prong of <u>Strickland</u>. Since both prongs must be satisfied in order to prove

---

[6] The post-conviction court also noted that, under state law, the denial of the motion to disqualify should have been raised on direct appeal and, thus, was not cognizable in a Rule 3.850 proceeding. The court cited Florida Rule of Criminal Procedure 3.850(c)(7), which states that the rule does not authorize relief on grounds that could or should have been raised at trial, and if properly preserved, on direct appeal of the judgment and sentence. However, Petitioner was not, and is not, alleging error in denial of the motion to disqualify, but is alleging that his counsel was ineffective in failing to seek review of that denial prior to the direct appeal by petition for writ of prohibition, which is a cognizable claim in postconviction. *See, e.g.*, <u>Franqui v. State</u>, 59 So. 3d 82, 96 (Fla. 2011) (distinguishing between claim of error that can be raised on direct appeal and is therefore not cognizable in post-conviction and claim of ineffective assistance of counsel, which may be raised in post-conviction).

ineffective assistance of counsel, 466 U.S. at 697, Petitioner has failed to

show entitlement to habeas relief.

Accordingly, Petitioner has not demonstrated that the adjudication of

this claim by the state courts resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law or

was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  *See* 28 U.S.C.

§ 2254(d).  Habeas relief on Ground 7 should be denied.

## Ground 8: Cumulative Error

Petitioner contends in this final ground that he was denied due

process of law in violation of the Fourteenth Amendment as a result of

cumulative errors.  ECF No. 11.  Petitioner raised a similar claim in his

amended motion for post-conviction relief, citing due process and the

Fourteenth Amendment.  Ex. C2 at 195.  Respondent argues that the

ground is unexhausted and procedurally defaulted because Petitioner did

not raise a constitutional claim or cite the Fourteenth Amendment in his

post-conviction appeal.  ECF No. 12 at 34-35.  Regardless of the failure to

exhaust his constitutional claim in the state courts, the claim is without

merit and should be denied.

Although the Supreme Court has not directly addressed the

cumulative error doctrine in the context of an ineffective assistance of

counsel claim, it has held that "there is generally no basis for finding a Sixth

Amendment violation unless the accused can show how specific errors of

counsel undermined the reliability of the finding of guilt."  Forrest v. Fla.

Dep't of Corr., 342 F. App'x 560, 564-65 (11th Cir. 2009) (unpublished)

(quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).

The Eleventh Circuit has rejected similar "cumulative error" claims

asserted in federal habeas actions. *See, e.g.,* Insignares v. Sec'y, Fla.

Dep't of Corr.*,* 755 F.3d 1273 (11th Cir. 2014).  The Court in Insignares

explained:

> Insignares claims cumulative error deprived him of a fair trial.
> Under the cumulative-error doctrine, a sufficient agglomeration
> of otherwise harmless or nonreversible errors can warrant
> reversal if their aggregate effect is to deprive the defendant of a
> fair trial.  Morris v. Sec'y, Dep't of Corr.*,* 677 F.3d 1117, 1132
> (11th Cir. 2012).  "This court has made clear that where '[t]here
> [is] no error in any of the [trial] court's rulings, the argument that
> cumulative trial error requires that this Court reverse [the
> defendant's] convictions is without merit.' "  *Id.* (*quoting* United
> States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) (per
> curiam)) (alterations in original).  Because we have found no
> error in the issues on appeal, Insignares has failed to show that
> the state judge lacked a reasonable basis to deny his
> cumulative-error claim.

*Id.* at 1284.  Even if petitioner's "cumulative error" claim was cognizable on

federal habeas review, the claim provides no basis for federal habeas relief

in this case.  Petitioner raised his "cumulative error" claim as Issue VIII in

his post-conviction appeal.  The state appellate court summarily affirmed

denial of the claim.  Because neither the State courts nor this Court has

found any error in the issues raised in Grounds 1 through 7 above,

Petitioner has not shown that the state courts lacked a reasonable basis to

deny his cumulative effect claim.

Because each of the habeas claims fail, the cumulative error claim

must fail.  Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir.

2012) (assuming without deciding that a cumulative error claim is

cognizable, cumulative error claim must fail as none of Morris's individual

claims of error or prejudice have any merit, and therefore Court has nothing

to accumulate).  *See also* Maynard v. Sec'y, Dep't of Corr., No. 16-16040-

C, 2017 WL 4457447, at *3 (11th Cir. May 30, 2017); Finch v. Sec'y, Dep't

of Corr., 643 F. App'x 848, 853 (11th Cir.) (unpublished), cert. denied,

Finch v. Jones, 137 S. Ct. 519 (2016); United States v. Gamory, 635 F.3d

480, 497 (11th Cir. 2011); Forrest, 342 F. App'x at 565 (unpublished).  For

the foregoing reasons, this cumulative error claim should be denied.

## Conclusion

Based on the foregoing, Petitioner Donnie Ray Stallworth, Jr., is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 16, 2018.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the**

**electronic docket is for the Court's internal use only and does not control**. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.